Vince Bronco, Federal Defenders on behalf of Mr. Acosta-Montes. Mr. Michael Burke is here on behalf of Mr. Yepez. I will be handling the argument for both clients on the main central issue in this case, but Mr. Burke is here if the court has any questions about the plea agreement in Mr. Yepez's case. And you are representing, I mean, you argue for both, but you're representing Acosta. Acosta-Montes, yes. Okay, thank you. A bulwark of the federal system is that federal courts should, where possible, respect state court judgments. Because the sentencing guidelines do not have any provisions to abandon this general rule when a state court modifies one of its own sentences, there is no legitimate basis to ignore the state court orders terminating probation in this case. Thus, Mr. Acosta-Montes's sentence must be affirmed and Mr. Yepez's sentence must be reversed because neither were under a criminal justice sentence when they committed their federal offense. As a matter of fact, they were. Not in the eyes of the state court. According to the state court. On the day they committed the federal crime, they were, even in the eyes of the state. On that day, well, on the day they committed offense, they were under the term of probation. But subsequently, the state court acted and said they were not on probation on that date. And in California, the state courts have wide discretion to modify or terminate the terms of probation of their ongoing probationary terms. No, but it's one thing when, obviously, there's something wrong with a conviction. Obviously, we always want to correct that. Or if a person modifies it prior to committing the offense. But here, I think as Judge Kaczynski has said, on the day that they committed the offenses, that they were under state court supervision. So one rationale in adding criminal history points when a defendant is under a criminal justice sentence when he commits his offense is the recognition that if a defendant cannot constrain his conduct to lawful activity while he is actively under state supervision from a prior criminal conviction, he is more culpable and deserving of an additional punishment. So it's different here in the sense they both were under that supervision. And so when you're talking about state comedy, the state here is using its power to avoid the sentencing guidelines. Well, no, the state court is entering a judgment under its own authority. The state court had absolute authority. But it's undisputed here that they went back after they got charged with a federal crime and went back to try to change their status on the date that they committed the crime. And the state courts in both these cases heard from both parties, heard the reasons that they were facing this long sentence, and essentially said, no, the state court judge said, my probationary sentence should have been shorter, and so reduced that term of probation to a period that ended before they committed the federal offense. But why can't you look at it the other way, that the state's saying, I don't really like the federal guidelines, so I'm going to do what I can to affect the federal guidelines. Because the guidelines and basing criminal history points on state court sentence are based on this that we're going to have to trust the state court judges in sentencing people. And unless there is a direct provision in the guidelines to say that we shouldn't follow the state court, the ultimate state court judgment, then you're basically just saying, well, we're going to make up a new rule. Well, you know, as you know from my dissent in Alba Flores, I am not offended by having state judges do things to affect federal sentencing. But I have a more difficult time with saying that they can change history. I mean, the reality is, if you take a snapshot of the date that your client and Mr. Yepres committed their federal offenses, they were under state supervision. This is different from Alba Flores, where they were under state supervision, but how long they would serve, how long it was something that was a predictive matter. And that was the key there, right? Because if it was more than a year. But here you're trying to undo history. And that's a – I don't think even state courts – I believe state courts have a lot of power, but maybe not quite that much power. The state court got the power to nunk pro tonk. This was nunk pro tonk, was it? Yeah. The state court judge entered his order terminating probation to a specific date, nunk pro tonk, yes. Well, that's not a very unusual power. You may call it rewriting history, but it's a normal power for a state court, isn't it? That's absolutely correct. And there's no state court decision saying this was some type of improper procedure. Certainly for state law purposes, for all purposes as far as state law is concerned, it becomes nunk pro tonk. But if federal law looks at the question of your status on the date you commit the federal crime and your status – I don't mean you personally, I mean the individual status. Well, I disagree with the premise that the guidelines look to your status on the day you committed the offense because the guidelines in several application notes are saying you're looking at the status at the time of federal sentencing. Well, let's look at it slightly differently. Application note 6 in the guidelines 4A.1.2 say that only the following sentences are not to be counted in computing criminal history. Sentences resulting from convictions that A, have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant. None of that happened here. Or B, have been ruled constitutionally invalid in a prior case and are not to be counted. So the two bases that application note 6 says that earlier sentences are not to be counted don't fall – rather the facts in these cases don't fall within the ambit of that note. What's your response to that? That convictions are fundamentally – modification of a conviction is fundamentally different from modification of a sentence. And this court has previously said that it's qualitatively different. The First Circuit has called it comparing apples and oranges. And so because the Sentencing Commission has created specific rules saying, okay, we're going to acknowledge some changes to convictions, it doesn't carry forward that they want to have changes – But this says sentences resulting from convictions. From convictions, yes. Right, but we're talking about sentences though. So what the state court did, if I understand correctly, was to modify the sentence. Isn't that correct? But the premise there is that the conviction, if these convictions are, say, overruled for a reason based on law or just set aside, those convictions go away. They don't count the sentence. Well, let me ask you this because we could have an interesting discussion about this, but I want to give everybody else time to comment as well. Do you have a case or cases that says what you just said, specifically that we should ignore this insofar as your case because you're talking about sentences? Well, that's the thing. I think here there is no provision in the guidelines saying one way or another. And so that's why you go back to the previous question that Judge Smith is raising, whether the clause modifies sentences or it modifies convictions. Does convictions that have been reversed or sentences? Now, the convictions in this case haven't been reversed, have they? Correct. So that the sentences resulting from convictions doesn't fall under this note, either 6 or 10, which deal with convictions that have been reversed. If it's a sentence that resulted from a conviction that had been reversed, it would fall under 6 and 10, right? Correct. Meaning these notes don't have any implication to just a modification of a sentence versus if a conviction has been set aside or explained. Counsel, I'd like to go back to a point that Judge Callahan was dealing with earlier because I'm still mulling this over. It appears to me that this section of the guidelines is about the defendant's state of mind at the time of committing the federal crime for which the current sentence is being imposed. And if it's about the defendant's state of mind, that is, what was he thinking when he committed this crime, he knew that he was under a sentence of probation at that time. And so I have a difficult time segregating that out and saying that even though there was a later modification of it, at the time he committed the federal crime, his state of mind was the one that this guideline seems to be targeting. I disagree that there's any mens rea component on how a district court calculates criminal history points. It's based on what the record was at the time. But it seems to me the point of this guideline is that a person who has paid their previous debt to society in full or they've never committed a crime is guilty or culpable in a certain degree. But a person who commits another crime while they're still paying for the previous one is considered more guilty. That's a choice that seems to be inherent in this guideline. And I wonder how your construct fits in with that understanding of the guideline. The construct is going back to the deference that the federal system should pay to the rulings of the state court judge. These were presented to state court judges and those state court judges said this term of probation that I imposed on you, you shouldn't have been on that when you committed the crime. But we're interpreting a federal guideline here. And it relates to something that happened at the state level, but ultimately we're interpreting how to apply a federal guideline, which is a federal question. Correct. But it also, I mean, the meaning of the term under a criminal justice sentence is a federal question, but not whether that person was on probation. And unless there is a provision in the guidelines that deal with specifically modifications of sentences, non-protuncant or not, the default rule is you give, you honor the judgments of the state court. Meaning there's lots of different specific rules. When the guideline or when the commissions want to have specific rules for sentences, for example, diversionary sentences, they say, well, with those, we're going to count them as a conviction if there's a finding of guilt. They tell you what to do when someone has a warrant out on a parole revocation. It's basically the silence here because there is nothing that says we shouldn't honor the state court judgments. Judge Smith had asked you whether or not you were aware of a case interpreting the guidelines, and you didn't answer that question, so could you answer that? Well, there's unpublished cases from this circuit prior to Alba Flores. The main out-of-circuit cases, there's a strong dissent that the rationale of the dissent in, I believe it's the Eighth Circuit, is more persuasive because what the case, the one or two cases miss is that. What are their names? What are the names of the cases? Martinez-Cortez is the 2-1 decision with the strong dissent by Judge Faye. And then Pedro Boches. Perclay. Pardon me? Perclay. Yes. And they're missing this concept of how unless the guidelines have spoken about something, you give deference to the ultimate judgment of the state courts. Well, not protunking a conviction or a probationary sentence, that is not uncommon in the state court system. Not at all. And one thing I'd like to point out is this honoring non-protunk modifications to sentencing is what the rule is in the immigration context, that they have a similar rule, meaning like expunged convictions or set-aside convictions you count under certain circumstances and don't. But the rule is in this circuit, in the BIA and other circuits, is you honor these non-protunk modifications to sentences. I think if Congress thought that there was a problem with this, they would have spoken and the commission would have carried that over to the guidelines. But this is something that's been going on in other contexts where, you know, I just think if Congress thought that a state court couldn't change whether or not someone gets deported, they wouldn't have a problem with a state court changing whether or not someone faces a minimum mandatory. But that's the problem. If we took the state of mind, which was a question Judge Graber asked you, the state of mind at the time this occurred, Judge Kuczynski's dissent would have been wrong, wouldn't it? I believe so, yes. Well, you don't have to hesitate. It's okay to hesitate. I was trying to think through my answer. That's a good idea, too. Your answer is it's not wrong, but it would have been wrong. I think the problem is the situation out on the floor is different. Well, it really is quite different. The question of how long you're going to be on probation is very different as to whether from the question of whether you are on probation, which is a question here. The question was your state of mind at the time you committed the Federal Act. What did you think as of that time? What did you think about whether or not you were under supervision? But I don't think ñ I just don't get that reading that there is this state of mind element expressly written into 4A1.48. Well, then what's the point of it? If it isn't about being more culpable if you're still serving probation for a previous crime, what's it about? Well, I mean, again, that's somewhat circular. No, it's ñ I'm asking ñ I have a thought about what it's trying to accomplish, but you obviously have a different thought. But I'm trying to find out what ñ why this guideline would even be there if it wasn't about being more culpable, committing a second crime while you're still serving probation for a previous crime. If it's not about that, what's it about? It may be about that, but the plain language of the guideline just says, was he on or was he not on probation? And under the laws of the state of California, he was not on probation. On the final judgment of the state courts here, these two individuals were not on probation when they committed the offense. And there's nothing in the guidelines to go, okay, as should this one policy reason from ñ Let's say on the same day he commits a federal crime, he ñ right before he commits a federal crime, he visits a probation officer and deposits a ñ whatever they're calling it in state courts, probation ñ well, this supervisor officer. And he's asked to give a urine sample, and he deposits a urine sample. And it's later tested and turned out to be dirty. Would the state court treat that as having not been a violation of his supervisor probation? I think it would be up to the state court judge. And that's actually one of the ñ that's why I think this holding may ñ assuming that you honor the non-proton orders in these cases, it's going to have somewhat limited effect in the state court because to go in and get one of these orders, you're essentially telling the judge that placed you on supervision that, I've committed this federal crime, and I need my probation shortened. Not too many state court judges are going to do that. Well, let me ask Mr. Zinzi's question. If the state court subsequently said non-proton, then you wouldn't have violated it. Correct. If the state court took that into account and said, look, you violated it, I'm not going to give you a non-proton, they would take it into account. Correct. I mean, even if you did ñ No, no, no. That's one possibility. The state could say, you know, you've terminated probation. But the fact is, while you were on probation, you still tested dirty. You committed another violation, which is itself a crime. But I just ñ the federal courts don't get into the rationales of the state court decision. And this court said that years ago in Guthrie that you have to take the final state court determination, and that's what you use for the purposes of the guidelines. If we were to accept your view of how this should be interpreted, would we be creating a split in the circuit? There would be a split with the 8th Circuit. There would not be a direct split with the Martinez-Cortez case because those individuals, they were not on probation when they got their court orders. But I think even under the 8th Circuit, under 8th Circuit cases, there's ñ if you look at the Kristall case, there may be an internal conflict even in the 8th Circuit because they have pejabotes that says we don't look to subsequent reconsiderations of sentences. But in the Kristall case, what you had is a person that was originally sentenced to two years in custody. They got their sentence reconsidered. The judge gave him then a probationary sentence, even though the person had already served a year. And the 8th Circuit says we have to honor the final sentence, which was probation. It only gave one criminal history point. So there may even be a conflict there. What did the ñ the lawyer who represented your client before the state court ñ what occurred during the ñ when the lawyer asked for the probation to be terminated, nunk, pro, tunk? My understanding is she filed papers asserting the reasons why she was asking for the relief and for the specific date. The prosecutor objected, and the state court heard both sides and agreed that the probation should be terminated nunk, pro, tunk. Does the record reflect that the request was for any reason other than to affect the upcoming federal sentence? No, but ñ And so my follow-up question to that is why isn't that an interference with the federal sentencing proceedings? Well, because the federal court had not decided yet. But state courts and any sentencing courts commonly look into collateral consequences when imposing sentence. So it's not proper to look behind the reasons why the state court did it. These ñ you know, in a probation revocation in federal level, one court might run his sentence concurrent to another. They're taking into account other judgments. You know, I think I disagree with you that it's improper to take into account why the state court judge might have been willing to enter this nunk, pro, tunk. I think the state court judge is perfectly well entitled to consider the collateral consequences of any decision he makes, either conviction or sentencing. And one of those things that's permissible is the effect on some federal sentence that has yet to be imposed. I've been pondering Judge Graber's question, and it seems to me that she's absolutely right, that this guideline does contemplate what's the state of mind at the time he commits this second act, the Federal Criminal Act. On the other hand, it seems to me that there's room within this guideline to allow for another factor besides what's in his mind, and that is where the sentence that has led ñ where the crime that has led to the probation is so minor that the state court judge is willing to give a nunk, pro, tunk order as to probation. In that case, well, okay, so we're looking at both things. We're looking at what's his state of mind, and we're also looking at whether this was really a minor crime, so minor that the state court judge is willing to give a nunk, pro, tunk order. And, in fact, all this really does is make a defendant eligible for the safety valve. And if the federal judge decides that ñ that's in the federal judge's discretion, whether to abide, you know, give him credit for the safety valve or not. And the federal judge could still sentence him to whatever sentence the federal judge deemed appropriate, even taking into account the state court modification. Exactly, and to respond, you know, if there's competing values, I suggest that the value of comity should take precedent. And absolutely, even if you make that rule, the district court judges, if they feel that there's been any gaming of the system, can correct that by doing a variance up to the fatal. The problem with that argument is that the federal scheme is meant to take away discretion from district judges, except in limited circumstances. And the safety valve is there to go through a floor which is a statutory ñ which is a hard floor otherwise. And it's meant to avoid having district judges exercise discretion. And it's not fair to me that state judges should be given the key to unlock the particular door that Congress has locked. Well, the problem is Congress, by choosing more than one criminal history point, has done two things. First, Congress has left it to state courts to, at least for one of the prompts, to decide whether or not this person is eligible or not eligible for a safety valve. But the second point is ñ You understand, it's quite different to say that state courts not knowing about future federal crimes will do what they will do, and their judgments will have an effect on federal crimes. It's quite another thing to say state judges will know about a past federal crime and be able to go back and unlock a door that Congress has locked by changing their minds. It's really quite a different proposition. But still, I mean, Congress has said, you know, we don't need someone that has absolutely no criminal record. We'll take some criminal record. And you do look at how minor the offense is. And if the state court judge feels that it's minor enough to shorten the term of probation, that should be honored. And the state judge may have felt that, considering all the factors, that the period of probation that was imposed was too long. Correct. And, you know, I have to make a confession. I used to nunk pro-tunk matters when I was on the municipal court and superior court. And other judges on those courts, that was a tool that we had to reevaluate a situation, see how a defendant that we had on probation was doing at that time. And I know in many cases I would look at someone's record and see that a certain earlier conviction stood in the way of this person's rehabilitation, be able to work, get a job, all that. And so in the interest of justice, I and others would dismiss a matter, nunk pro-tunk. Never had a problem with DAs and city attorneys. And I think that's a point. I think that the sentencing commission had to be aware that nunk pro-tunk modifications had been taking place for years. And they did nothing to close. Let me ask you this. Do you think it would be equally okay for a, I mean, let's say this is a statute like in Alba Flores where the defendant is on probation for less than a year, for the U.S. attorney to go into state court and get the state judge to increase the length of probation in order to constrain the federal judge's discretion and say, if you just judge, if you just lengthen the probationary sentences of this defendant just one day over a year, then we can get a 10-year mandatory minimum from the federal judge. And we'd like you to help us out that way. Do you think that would be okay, too? Well, I think... And the state judge said, that's great. I think drug dealers ought to... The thing is... I think they should say, there's the door, leave. But let's say it was not the door. They said, yeah, that sounds like a good idea. And then they came back to Judge Preggis and said, is this the judge? And you told him, and he was told, well, now you don't have discretion. What do you think you'd do? Well, the guidelines have a provision for if the sentence is imposed prior to the federal sentence, the court is supposed to honor that. And that's why I think the same thing has to be true here. So wouldn't a judge non-proton lengthen the term of supervised release? I believe that this court would have to honor it. This court would then be bound to issue a, to be, the minimum sentence. Yes. What does U.S. v. Hayden have to say about this case, if anything? That involved an expungement, but the concept is similar. I disagree. And this court has said it disagrees. The concept of a modification to a conviction is fundamentally different from a modification of sentence. I'd like to save some time for the final. What is ironic here is the Supreme Court of the United States has said that sentencing guidelines are unconstitutional. Didn't they do that once? Yes. And so they were dead and now life is being breathed back into them, you know, way in the past. So don't we have to start out with the concept that we're dealing with an unconstitutional statute that is supposed to serve as a guideline for district judges? It's a little crazy, isn't it? I agree it's crazy. But it's in 3553F for one criminal history. We'll let you save the balance of your time for a moment. We'll hear from the government. Good morning. Kyle Hoffman for the United States. As with Mr. Bronkow, I'm the counsel on the Acosta Montes matter, and I would like to cover the common ground. My co-counsel, Timothy Perry, is here. He is involved in the Yepez case. I'd like to start where Mr. Bronkow talked about the notion that there was a default rule of deferring to a state court judge and that the state court judgments always had to be respected, even when it comes to deciding a question of federal law. I would suggest that the default rule is provided by the sentencing guidelines themselves, and that's this. Prior sentences are to be counted unless otherwise excluded. So, for instance, I think Judge Smith brought this up. Does it say prior state sentences? It's prior sentences, period. All prior sentences, including tribal sentences, military sentences. But that doesn't help you any, because we're not talking about the sentence here. We're talking here about the probationary term. Well, Your Honor, I would suggest that when you look at that provision, that is that prior sentences count unless excluded, you note what is excluded, expunged, reversed for unconstitutional error, et cetera. You don't want the conviction that's reversed. All right. Look, get down to that. The prior sentence is not otherwise excluded or to be counted. The question is, is it to be excluded if it's non-protunct, modified so that it's less than a year probation? I agree that that's the question. So if it is, I mean, if your opponent is right and you can have a non-protunct, then it's a sentence that is excluded because it's probation of less than a year. I disagree, Your Honor. And the reason I disagree... Because it becomes not prior. If you accept the non-protunct provision, then the nature of non-protunct is that it becomes not prior. So the language doesn't really solve the problem. I would suggest, Your Honor... Let me ask you this question. Everyone is concerned about gaming the system. Can the state court judge say at the time of probation, you know, your fellow culprits are going to get probation for two years, but I know what the federal sentence is, and you're going to end up with 10 years if you do anything in the federal courts. And I don't think – I think this is such a minor sentence that I don't want to give you that. I'll give you one day less than one year because that will affect the federal sentence. There would be nothing wrong with that, would it? That is, back at the time, the state court judge... Yeah. And he was aware of the consequence, the federal sentence. I agree with that, Your Honor, because... He can base his sentence on trying to avoid the federal sentence. If the state court judge in this instance had said to either of the defendants, I'm not going to give you probation at all, or if they had walked in beforehand, before they committed their federal offenses, and said, I want my probation 10 years... I want one day less than a year because I'm concerned that my client may get a federal sentence. Right. And if he doesn't think about that and they come to him later and say that, is that any more gaming the system? Your Honor, I'm not standing on the proposition of gaming the system or not. What I'm suggesting is that the federal guidelines and federal law determine how the federal courts should look at state court proceedings. So, counsel, how do you account for the concept of comedy, in your view? I would suggest, Your Honor, that comedy is not... By the position that we're advocating, comedy is not offended, so to speak. We're not saying that the state court can't do what it wants with its defendants, not saying that the... not enjoining a state court proceeding, not even saying that under state court law this is an invalid order, not deciding that. What we're saying is, given... What you're doing is not giving the state court order any effect in the federal proceeding. At least that's what you're arguing for. Well, what I'm arguing for is that the plain language of 4A1.1d, which says... I think we've already established the plain language doesn't help you. Well, I'd suggest, Your Honor, that at least it puts us... I mean, is there a guideline that directly addresses this? No. Guideline does not say anything... The Sentencing Commission hasn't addressed this at all, have they? But the point I'm trying to urge... I know, but answer my question. The Sentencing Commission hasn't addressed this precise situation at all. It has not addressed non-pro-tunk orders. Right. But my suggestion is that when you think about the default rule of prior sentences count unless excluded, the fact that non-pro-tunk isn't mentioned counts in the government's favor on this, not against it. Well, it depends on what you mean by sentence. Let me ask... There's a variation on Judge Reinhart's question. What if the sentencing judge in state court in the shoplifting case had said, Okay, this is shoplifting. I take it seriously, but it is only shoplifting. I sentence you to one day in jail plus three years' probation. However, I'm worried about the possibility of federal crimes and mandatory minimums and eligibility for the safety valve. Therefore, as part of my sentence today to probation, I say that this probation is automatically terminated if you ever commit a crime that will subject you to the mandatory minimum and would otherwise deprive you of the safety valve. So that's in the probation order. What's the consequence? I think the consequence for my position is that that order would be in effect because he wouldn't be on probation as of the date that he committed the new federal offense. So how is this one different? That is to say, that's the consequence of what's happened. It's just that you go back and ask the judge, Is that what you meant? And he says yes. Well, I disagree that these non-pro-tunk orders are going back and saying, Is that what you meant? I don't think the record establishes that the state court judges said, Oh, you know what? I made a mistake back then. I really didn't intend to. But counsel, in their papers, in both the Epes and Montes, the papers that they filed before the state court expressly represented, This is the situation. And ask the judge, Is this the consequence you meant the sentence to have? And in both cases, the state court judge, seeing the consequence, said no. We didn't want to have this consequence. Right, but that's a different concept than a non-pro-tunk order, which says at the time I imposed the sentence, I intended it to be a voice as Judge Fletcher described. Are you sure about your answer to Judge Fletcher's question? I mean, I would have thought you would have said no. I asked the question so nicely. I found that before Judge Fletcher, so I know that tone of voice. But do you really, I mean, if that's your position on behalf of the United States, that's fine. But it's a very fine question. You probably didn't take a class from Professor Fletcher, so you weren't used to this. I did. I was fortunate enough to have a class with Professor Fletcher. That's why you said yes. Still trying to get an A. I'll leave that one aside. But let me repeat the point. I mean, just think about it. Are you sure that's the answer you want to give? Well, I'm not 100 percent positive. But what I think Judge Fletcher was asking was basically if the court had imposed an order that explodes. It's like an exploding. It puts you on probation for all purposes except if you were to commit a 10-year mandatory minimum offense. Right. So the minute before you, you know, this ties into Judge Draper's question about state of mind. The minute before you commit the crime, you say I'm on probation. I can't use drugs. I can't consult with criminals, you know, the usual terms. But, boy, if I commit this federal crime, I get off probation. I think it's a logical consequence of the position that I'm taking. What I think also the question illustrates is the absurdity in a way that a state court judge would do that in advance. I don't believe most people. Let me ask you. I think now that you've given that answer, a lot of state judges will do it in advance. Well, all I have to do is figure out not to give a three-year sentence for a very minor offense that's a misdemeanor. There are lots of very minor misdemeanors. And once they become aware that that's going to serve as a basis of a 10-year sentence for someone who obviously wouldn't do it, then maybe state court judges will think in advance I won't give him a three-year probation. That's possible. And then there won't be any problem. We'll have to argue about whether a state court judge has the right to give a non-proton sentence so that he can do what he would have done had the issue been presented to him in the first place. Let me ask you a different question. We have it from a different angle. Let's say that you have a federal crime where the sentence is enhanced if the victim is a spouse and you have a state court order that subsequently annuls the marriage. It turns out that they had a marriage ceremony, but one of the spouses was previously married and so incapable of marriage. So the state court judgment, not having anything to do with the federal sentence, but this is discovered and the other spouse goes to state court and gets the sentence annulled. What effect does that have on the federal sentence? Remember annulment, as I understand it, nullifies the status of being a spouse ab initio. You don't have to say non-proton because you were never married. It's void ab initio. Well, they don't say void ab initio. There's a declaration by the state court that you seem to have been married, but you in fact were not legally married. So what effect does that have? And this is not done for purposes of affecting the federal sentence or anything else. It's just that the spouse realizes this is somebody who is incapable or incapacitated from being married, and so they go into court and say, I want an annulment. Does that affect the federal sentence or not? It would depend. Well, okay. It would depend on a specific act. I can give you more facts. What would you like? Your Honor, I don't think it would necessarily depend on more facts. I think it would depend. Well, what would it depend on? It would depend on the specific language of the statute at issue or on the specific language of the guideline at issue. Okay. The guideline says, but if the victim is spouse, husband or wife, then two-point enhancement, two additional points. You know, whether you're a spouse or not is a question of state law, as we all know, right? So the federal judge comes to sentencing, and you as the AUSA say, well, you know, they were married. Here's a marriage license, you know, they were married. And they come back and say, well, but here we have an annulment order that's, the answer is? The answer is it would depend on whether there's a guideline provision that excludes. It would depend since, I'm sorry, whether what? There's no other provision. If you're married. There's no other provision. Then it would count, and it would count because of the same. So what would count? No, no, the enhancement for doing something to your spouse while you're married for the same reasons that Judge Graber and Judge Callahan pointed to, which is that the purpose of it is to enhance a sentence where a particular relationship is abused, say. But you're, in fact, not married. In fact, it's a determination by the state court that you were never married. You couldn't be married because it turns out this other person is married to somebody else or is a minor, you know, all the rest of the same sex as you are. You know, something like that. You know, one of those things. Your Honor, I would suggest that it would have to be decided as a question of Federal law and that the purposes for the Federal law would come into play there and the particular language of the enhancement issue would come into play. You don't have a clear answer, huh? I don't because I don't think that I don't have a statute in front of me. I don't have a plain language of the guidelines in front of me. Let's say you're never married. You thought you were married because some witch doctor drew three circles over your head. And you thought you were married, but you never were married. Then what would the answer be? You're not back in law school. It never sounds like it. I'll perform the wedding ceremony. Do you feel like claiming the fifth here? No. Here's what I would suggest, though. It's this. It's not the case that the Federal courts for deciding this. Mr. Hoffman looks anxious to answer that question. Oh, no, you, Mr. Hoffman. Mr. Perry looks anxious to answer that question. Mr. Hoffman is not anxious. Well, I've done the best I can to try to answer it. Doesn't it lead to the question about mens rea? I'm not quite sure why state of mind has anything to do with this. Isn't it status and not state of mind? I agree that the plain language of the provision has to do with the status. Right. Part of it does and part of it doesn't. There actually are two parts. It says the defendant committed the instant offense while under any criminal justice sentence, including probation and a list of other things, or escape status. So you could read that as being the sentence, including probation, but the status has to do with escape. I mean, that's another way to read that. Well, what I would say also, Judge Graber, is that the policies that you pointed to are right in the guidelines. They say a recidivist, and particularly a recent recidivist, deserves to have their sentencing points increased, and that persons that have been the beneficiaries of rehabilitative sentences and then gone on to reoffend deserve to have their points increased. I guess it does not have to do with status and not state of mind. Yes. I mean, if there are mens rea requirement, it would be in there. And if somebody erroneously believed they were on probation, they wouldn't get an enhancement. It has to do with actual status, not perceived status, doesn't it? I'm agreeing with Your Honor insofar as there is no mens rea requirement in the plain language of the guidelines. Right. But the purposes have to do with basically if someone's on a probationary sentence, they should straighten up and fly right, not commit a mandatory minimum offense. I mean, you don't disagree with Mejia, right? I do not. I don't think it has any applicability to this case. Well, how would you distinguish it then? And why doesn't it control the outcome here? There is no ‑‑ the defendant in Mejia did not commit an offense while on probation. So 4A1.1D, the plain language that I'm relying on, doesn't apply. The defendant in Mejia had a probationary sentence that was ‑‑ the imposition of sentence was suspended from the very beginning in Mejia, which made a difference in the outcome of the case. Well, three days later. And then 16 years later, after the state court had said you're on probation and then three days afterwards terminated it, then he commits an offense. Years and years later, it's really ‑‑ Well, some AUSA stood up and argued out of the way, so that's why I was wondering. Not so many years ago. Let me see who it was. Mr. Aghaian from Riverside. Aghaian. Raymond Aghaian. AUSA. But it seems Aghaian telling you he was wrong. But going back to the question of a bit of state of mind, let's say there's no federal offense. That we have a person who's on probation, he commits a state crime that has sort of a similar situation. The state court judge goes non‑protonque because it takes into consideration. I mean, that's what the defendant's been doing and decides to issue a non‑protonque order. Now then, subsequently, he commits a federal crime. Is it your position that the non‑protonque order is invalid? Let me see if I understand. I know it's a complicated thing, but let's assume that the non‑protonque is accomplished well before he commits a federal crime. But in the interim, he's done something else and the state court has decided, well, we're going to turn. In other words, identical circumstance we have here, but it all happens in state court. Then subsequently, he commits a federal offense. After the date the court has entered the non‑protonque order? Yes. Well, I'm not disputing that the state court, even for federal law purposes, if it enters a new order, then it would govern the state of affairs, so to speak, from that point forward. Right. My point being that if you're talking about the purposes of the guidelines, straighten up and fly right, if he commits another state offense and the state court judge decides to non‑protonque that in a fashion, you don't care, do you? That's up to the state court. Right. So why isn't it just status and not the state of mind of offending, committing a crime while you're on probation? Well, I'm not going to sit down with guns blazing on the notion of state of mind. I think that's a point that could be raised from the policy. Okay. Now, I would just like to— What bothers you the most here is that this belief that the system was gamed. I don't—the notion of gaming the system is not something that—I'm not arguing that. What I'm saying is that the plain language of the guidelines and its policy statements and its background govern the situation here and that it can't be evaded in this particular way. I'm also saying that it's just not the case that the federal courts, when deciding a federal question, just sort of abdicate and let the state take over what the state court does. My opposing counsel cited Guthrie in his papers and here. The court in Guthrie said, we conclude doctrines such as full faith and credit, collateral estoppel, race judicata, and related jurisdictional principles based on comedy are inapplicable in this context where the issue is the role of a state conviction in a federal sentencing scheme. That's the issue. We conclude the question whether the district court owed deference to the state court's judgment or that the state court owed deference to the federal court is misplaced. We must decide instead what the sentencing guidelines demand. I think that was the point of Judge Graber's comment earlier. Let me say it this way, if I may. We've got two experienced district judges looking at two defendants and in both cases they say very clearly that if it weren't for the mandatory minimum 10 years, they would sentence these two individuals to substantial sentences but nothing close to 10 years. So we then look at the safety valve and the safety valve is available as a matter of statute but this particular provision of the safety valve looks to the guidelines which Congress itself didn't really enact. The guidelines come out because of what the Sentencing Commission does and we've got a word about probation that I think, given you can just hear the argument back and forth from the bench, is not readily susceptible to a single meaning. I think it's fairly open to debate. Why do we, in this circumstance, choose the meaning of the word probation to produce the harsh result instead of the result that two experienced district judges think is the proper result? I could say it in a formalistic way saying, well, why don't we apply the rule of lenity? But what I'm looking at is a term in the guidelines that drives this whole thing that I think is susceptible to two different meanings and I'm very reluctant to say, you know, district judges aren't to be trusted and that we should therefore interpret this word that has some ambiguity to it to take away the discretion. Your Honor, I'd respond with a couple of points. One is I don't think I agree with Your Honor that it's susceptible, it's ambiguous about the rule of lenity. I understand. The second is that it is true that the district court judges said some things that said they would not impose the mandatory minimum if they didn't have to. Exactly. One did Judge Burns and the other, Judge Wren, said I'm not going to do it because I don't think I'm. He made it particularly clear. Right. But I would suggest this. Judge Burns, the one who did impose the mandatory minimum and from which the defendant appeals, was also very clear that he read the guidelines in the way that I'm advocating, which is that the guidelines and the statutes and their interplay. Right. Of course. And that there were a lot of comments about what the state court judge does doesn't affect, as I understand it, what I'm required to do by the law. But I think in a way that makes the point. We've got two district judges. One reads the word one way and the other one reads the word the other way. One thing I should point out, actually, Your Honor, is that I believe it's the case, actually it is the case with both district court judges, at the time that Alba Flores' case had not been decided. So that makes a difference too in terms of how bound, so to speak, the district court judges might have felt. Once that was decided, I think it's a different story. But Alba Flores is in play now, of course. In a sense, yes. I mean, that was the basis of our petition. I have a question. I think in the Tenth Circuit case, the Tenth Circuit recognized that Section 5C1.2 of the sentencing guidelines requires a court to give safety valve relief and disregard any mandatory minimum if the defendant is safety valve eligible. Do you agree with that? Yes. But that presupposes that they don't have two criminal history points. Right. But once you get to that point, it requires the judge to give safety valve relief. Well, if they meet all the other requirements, of which there are four, and it's the defendant's burden to prove that they've met them. Well, in this case, both defendants had met all four. There was no dispute about the others. Right. And, in fact, the government in these cases recommended a lower sentence, agreed to the lower sentence. Well, the government's position was that if the mandatory minimums didn't apply, they would agree, and they were safety valve eligible, they would agree to a lower sentence. But the position all along from the government was that mandatory minimums did apply. So it's a little different. Did anybody oppose the motions before the state court to, unquote, tunk the modified sentence? The district attorneys did. They did oppose it. So there was an opposition. Yes, but it was not from the assistant United States attorneys. I'm just wondering. I didn't see that in the record that it was opposed. It was opposition. I should say, though, that it's a little unclear in the sense that the basis of the non-pro-tunk orders in the state court, I think Judge Timlin pointed this out, 1203.3 is not reflected on the actual non-pro-tunk orders, and nor in the underlying papers was it urged on that state court ground. But for the purposes of argument, we'll assume that that's what it was. Well, does it make any difference that the state court's order in U.S. v. Alba Flores relied on California Penal Code 12.3.4 rather than 1203.3 to modify probation? No, it doesn't make any difference. And the reason it doesn't make any difference is because the basis of the Alba Flores opinion is basically you can't change history. Once history happens and they've committed their federal offenses while under a criminal justice sentence, that's the relevant fact under 4A.1.1D. And a later acquired state court order can't undo that relevant fact. That's the basis for the holding. I think Judge Kaczynski, I think the dissent was based on the notion, well, wait a second, the district court or the state court terminated probation before a year, and it has to be probation over a year for that particular sentence. So even the dissent, I would suggest, is not applicable here. No, but it would counter the argument that you take the snapshot in time, at a time when they were under a one-year probation. Well, that was the majority's view, that that's what you have to do. But if you took that view, you'd disagree with the sentence. I'd be happy to try to answer any other questions from the court. I'm just suggesting. Go ahead. I was going to ask you about Application Note 1. The panel referred to that, and basically if we're talking about the snapshot theory, so that that cuts against the snapshot theory that you – it contemplates that further action by the state court in another case, a sentence, would be counted at the time of sentencing. Reasoning then, let's – the marker is take the state court record at the time of sentencing rather than at the time of the offense. So how do you respond to that? Well, I agree that the application seems to contemplate a situation where there's another sentence. I would suggest it contemplates the suggestion another sentence on another crime comes up in between the two. Right. That's clearly what it contemplates, but the analogy would be when you take the picture. I know the argument was made at some point years ago that you froze it at the time of the offense, and the application guideline now provides, no, you count everything that goes on until federal sentencing. Right. So the analogy then is why don't you count all the state court actions, even if it's a non-protonc, and take the snapshot at the time of sentencing? Two reasons. One is, again, the plain language of 4A1.1D, which says what was the state of play when he committed the incident of offense. The second is I would suggest that the non-protonc orders are not prior sentences. Prior sentences are defined in the guidelines as sentences imposed upon adjudication of guilt. This is something that is not on adjudication of guilt. It's on some other kind of proceeding. And that's just the definition in 4A1.2. What was the prior sentence was the three-year probation. So those are my results. I think the question was that the panel was reasoning, I think, by analogy, because we know that there is no, I mean, to say that the guidelines don't apply to the situation is self-evident. There's nothing that applies to this situation. So to say that one application, one doesn't discuss it, it's fair, but it's not relevant. The reasoning by analogy, I think, is when do you take the snapshot. And that depends on the particular guideline provision that you're applying at the time. And I'm suggesting that 4A1.1d is the one that's applicable at the time. And I'm also suggesting that, really, the state court orders modifying sentences, as my opposing counsel says, aren't prior sentences in the way that are contemplated by 4, the commentary that the court is advocating. But certainly you would argue that the defendant's conduct post-arrest and pre-sentence could be taken into consideration. If they committed another offense and were sentenced, of course. But that's, yes. Okay, thank you. Thank you. I'd like to make two brief points, one about Guthrie and the other one about the mens rea component. First about Guthrie, the government read a quote, and at the end of it it said, in this context. And in the context of that case, it was a federal court saying the state court was bound by its determination that the person had gotten adequate representation in the state. The next exact sentence to the quote that the government stated says, as we explain, however, the district court was bound by the sentencing guidelines to respect the state court's judgment vacating Guthrie's conviction. A little while later it goes on to state, the state court has plenary authority to vacate state convictions. Once the court vacates a conviction, that conviction expires in the eyes of the state. It would therefore be odd, and we believe contrary to the guidelines, for a federal court to treat as valid a state conviction that no longer exists, even though the conviction is being considered for the limited purposes of federal sentencing. So that's strong support that this court, the federal courts need to honor the state court determinations. As to the mens rea component, if there is an even one, and I suggest that it's based on the status, not on mens rea, but say there's this component, it's not absolute even by the express terms of the guidelines. For example, not just any probation will do. For many crimes where there's probation of less than a year, even though the person's on probation, it still wouldn't be on probation for a criminal justice sentence. The same thing would happen is if there's an outstanding warrant out for a prior sentence of probation. If that conviction was so old that it didn't count, other than the warrant, the guidelines won't count it. So there's no just pure mens rea culpability concept. That also meant. OK, thank you. The case is just all you've seen submitted to adjournment.
judges: Kozinski, Pregerson, Reinhardt, Thomas, Graber, Wardlaw, Fletcher, Gould, Rawlinson, Callahan, Smith